STATE OF WEST VIRGINIA

**FILED**

**April 23, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**MICHAEL KELLER,**
**Claimant Below, Petitioner**

**vs.)    No. 20-0608** (BOR Appeal No. 2055210)
                    (Claim No. 2015033220)

**MURRAY AMERICAN ENERGY, INC.,**
**Employer Below, Respondent**


## MEMORANDUM DECISION

Petitioner Michael Keller, by counsel M. Jane Glauser, appeals the decision of the West Virginia Workers' Compensation Board of Review. Murray American Energy, Inc., by counsel Aimee M. Stern, filed a timely response.

The issue on appeal is temporary total disability benefits for physical rehabilitation. The claims administrator denied Mr. Keller's request for temporary total disability benefits on a physical rehabilitation basis on April 15, 2019. The Office of Judges affirmed the claims administrator's decision on February 12, 2020. This appeal arises from the Board of Review's Order dated July 21, 2020, in which the Board of Review affirmed the Order of the Office of Judges.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under W. Va. Code § 23-5-15 (2005) (Repl. Vol. 2010), in relevant part, as follows:

(b) In reviewing a decision of the board of review, the supreme court of appeals shall consider the record provided by the board and give deference to the board's findings, reasoning and conclusions[.]

1

(c) If the decision of the board represents an affirmation of a prior ruling by both the commission and the office of judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the Supreme Court of Appeals only if the decision is in clear violation of Constitutional or statutory provision, is clearly the result of erroneous conclusions of law, or is based upon the board's material misstatement or mischaracterization of particular components of the evidentiary record. The court may not conduct a de novo re-weighing of the evidentiary record. . . .

*See Hammons v. West Virginia Office of Ins. Comm'r*, 235 W. Va. 577, ___, 775 S.E.2d 458, 463-64 (2015). As we previously recognized in *Justice v. West Virginia Office Insurance Commission*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012), we apply a *de novo* standard of review to questions of law arising in the context of decisions issued by the Board. *See also Davies v. West Virginia Office of Insurance Comm'r*, 227 W. Va. 330, 334, 708 S.E.2d 524, 528 (2011). With these standards in mind, we proceed to determine whether the Board of Review committed error in affirming the decision of the Office of Judges.

Mr. Keller, a coal miner, injured his right shoulder and back while pulling on hoses in the course of his employment on June 3, 2015. The claim was held compensable for sprain of unspecified site of shoulder and upper arm and thoracic sprain. On September 2, 2015, Allan Tissenbaum, M.D., performed surgical arthroscopy, debridement of chondral damage, debridement of biceps, and open subscapularis repair on the right shoulder. The postoperative diagnosis was right subscapularis tendon tear and partial thickness rotator cuff tear. It was noted that there was anterior scarring and chondral damage.

Dr. Tissenbaum treated Mr. Keller for postoperative right shoulder pain on December 4, 2015, and physical therapy was recommended. On January 15, 2016, he was seen for follow-up evaluation and Dr. Tissenbaum noted that Mr. Keller's right shoulder was not improving. He returned to Dr. Tissenbaum on February 19, 2016, at which time it was determined that a recent MRI showed evidence of a traumatic injury of the subscapularis tendon, which was either recurrent or never healed properly. Dr. Tissenbaum recommended additional surgical repair which was performed on April 5, 2016.

Joseph Grady, M.D., performed an independent medical evaluation on September 8, 2016, in which he diagnosed status post right shoulder surgery for rotator cuff tears and humeral head chondral injury with biceps injury and debridement. He assessed 6% whole person impairment. The claims administrator suspended temporary total disability benefits on September 16, 2016, based on Dr. Grady's report.

The claims administrator referred Mr. Keller for rehabilitation evaluation. On November 2, 2016, Erin Saniga, M.Ed., CRC, LPC, prepared a rehabilitation plan indicating that Mr. Keller was to undergo a functional capacity evaluation and be paid rehabilitation temporary total disability benefits until December 9, 2016. The purpose of the functional capacity evaluation was to determine if Mr. Keller would benefit from rehabilitation services.

2

On December 15, 2016, the claims administrator approved vocational rehabilitation benefits from December 10, 2016, through January 8, 2017. Vocational rehabilitation services notes from Allegiant Managed Care indicate Mr. Keller was to complete vocational exploration, a functional capacity evaluation, and job retention training. On December 26, 2016, the goal was to return to work for the same employer but in a different position. By January 26, 2017, the goal was to return to work with a different employer. A closure report dated April 19, 2017, indicates that no further services were recommended. Mr. Keller was determined to be capable of seeking and applying for employment on his own. No formal training to be reemployed was recommended.

In a December 15, 2016, disability status form completed by Ross Tennant, NP-C, it was stated that Mr. Keller could return to work with restrictions. He could carry no more than twenty-five pounds, and he could not crawl. The claims administrator suspended vocational rehabilitation benefits because the ninety days of job searching ended on April 8, 2017. The claim was closed for vocational rehabilitation benefits on May 8, 2017.

In an August 28, 2017, letter, Ms. Saniga opined that Mr. Keller was employable, that he had the skills necessary to seek and apply for employment, and that he did not require formal training. She also found that there was suitable employment available to him in his labor market. File closure was recommended as Mr. Keller no longer required assistance.

On October 30, 2017, the Office of Judges reversed the claims administrator's closure of the claim for vocational rehabilitation services. It ordered that the claim remain open for vocational rehabilitation services and that the claims administrator formulate a plan for rehabilitation. It also ordered that temporary total disability benefits be paid until completion of the rehabilitation plan or rejection of the plan by Mr. Keller. By Order of the claims administrator dated November 8, 2017, vocational rehabilitation benefits were approved based on the decision of the Office of Judges. The benefits were approved from October 30, 2017, through December 27, 2017. The claims administrator stated that the benefits would be terminated if Mr. Keller did not fully participate in the plan.

A Rehabilitation Plan was prepared on November 21, 2017, with a goal to assist Mr. Keller with returning to work in an appropriate position by developing skills necessary to seek and obtain appropriate employment. Mr. Keller was to participate in job placement from November 27, 2017, to December 27, 2017. He was to be paid rehabilitation temporary total disability benefits for that same period of time.

By Order of the Office of Judges dated December 4, 2017, the June 30, 2017, Order of the claims administrator, which denied authorization for a referral to pain management, was affirmed. This decision was reversed by Order of the Board of Review dated July 24, 2018.

In correspondence from Ms. Saniga dated January 15, 2018, Mr. Keller was advised that his file with Allegiant Managed Care was being closed. Ms. Saniga stated that the closure of the file does not affect any medical treatment/benefits that he may seek in the future. By Order of the claims administrator dated January 17, 2018, Mr. Keller was advised that rehabilitation benefits were suspended based on Ms. Saniga's letter. It was stated that the claim would be closed on

February 4, 2018, for rehabilitation benefits unless additional evidence was received which substantiated continuation of the benefits.

A Closure Report dated January 18, 2018, prepared by Ms. Saniga stated that no further services were recommended. She stated that no documentation of applications submitted had been received by her office since the expiration of the most recent plan dated December 27, 2017. Ms. Saniga stated that given the income afforded to Mr. Keller by Social Security Disability, he has little incentive to obtain alternate employment. She advised that the goal of the current rehabilitation plan to assist Mr. Keller with returning to work in an appropriate position by developing the skills necessary to seek and obtain appropriate employment had been met.

On February 5, 2018, the claims administrator closed the claim for vocational rehabilitation benefits. The claims administrator stated that the reason for the suspension of benefits was that additional evidence had not been received to substantiate the continuation of benefits. Mr. Keller protested the claims administrator's decision.

The Office of Judges reversed the claims administrator's February 5, 2018, Order in a decision dated August 8, 2018. The Office of Judges found that Mr. Keller showed that the claims administrator erred in closing his claim for further vocational rehabilitation services because he complied with the latest rehabilitation plan. The Office of Judges concluded that the claim should remain open for vocational rehabilitation services with another vocational plan formulated regarding the same, pursuant to No. 6 of the Hierarchy for Vocational Rehabilitation Services, within ninety days of the date of the Order. It was further ordered that Mr. Keller would be paid temporary total disability benefits pursuant to West Virginia Code § 23-4-9 from the date of the current Order until completion of the rehabilitation plan or rejection of the plan by Mr. Keller.

On January 7, 2019, the Board of Review found the Order of the Office of Judges to be clearly wrong in view of the reliable, probative and substantial evidence on the whole record. In determining whether Mr. Keller's claim was properly closed for vocational rehabilitation services, the Board of Review examined West Virginia Code § 23-4-9(b) and West Virginia Code § 23-4-9(c), which provide, in relevant part:

> In cases where an employee has sustained a permanent disability, or has sustained an injury likely to result in temporary disability as determined by the commission, successor to the commission, other private carrier or self-insured employer, whichever is applicable, the commission, successor to the commission, other private carrier or self-insured employer, whichever is applicable, shall at the earliest possible time determine whether the employee would be assisted in returning to remunerative employment with the provision of rehabilitation services and if it is determined that the employee can be physically and vocationally rehabilitated and returned to remunerative employment by the provision of rehabilitation services including, but not limited to, vocational or on-the-job training, counseling, assistance in obtaining appropriate temporary or permanent work site, work duties or work hours modification, by the provision of crutches, artificial limbs or other approved mechanical appliances, or medicines, medical, surgical, dental or hospital

4

treatment or other services which the commission, successor to the commission, other private carrier or self-insured employer, whichever is applicable, in its sole discretion determines will directly assist the employee's return to employment, the commission, successor to the commission, other private carrier or self-insured employer, whichever is applicable, shall immediately develop a rehabilitation plan for the employee and, after due notice to the employer, expend an amount necessary for that purpose.

(c) In every case in which the commission, successor to the commission, other private carrier or self-insured employer, whichever is applicable, orders physical or vocational rehabilitation of a claimant as provided in this section, the claimant shall, during the time he or she is receiving any vocational rehabilitation or rehabilitative treatment that renders him or her totally disabled during the period of rehabilitation, be compensated on a temporary total disability basis for that period.

The Board of Review determined that Ms. Saniga noted on November 22, 2017, that Mr. Keller told her that he was awarded Social Security Disability benefits in April of 2017. She further stated that he has little incentive to obtain alternate employment, given that he has been awarded Social Security Disability benefits. The Board of Review concluded that there is no indication at the present time that Mr. Keller would be assisted in returning to remunerative employment with the aid of rehabilitation services. Consequently, the August 8, 2018, decision of the Office of Judges was reversed and vacated. The claims administrator's Order dated February 5, 2018, which closed the claim for vocational rehabilitation services was reinstated. The Board of Review stated that its ruling does not preclude Mr. Keller from requesting vocational rehabilitation services/benefits in the future.

Mr. Keller was re-evaluated by Dr. Grady on October 12, 2018. Dr. Grady stated that his condition was similar to what it was when he was seen in September of 2016, although his range of motion was slightly improved. It was noted that the results of his most recent MRI were still pending. Thus, Dr. Grady stated that if the more recent MRI revealed significantly different findings, then further follow-up would be considered, such as a re-evaluation by an orthopedic surgeon. If no specific treatable abnormality was noted on the MRI, it would be Dr. Grady's expectation that Mr. Keller would be at his maximum degree of medical improvement. Dr. Grady did not anticipate that conservative treatment could significantly change Mr. Keller's condition.

On December 17, 2018, Mr. Keller requested physical rehabilitation benefits pursuant to West Virginia Code § 23-4-9. He also requested to be compensated on a temporary total disability basis while participating in the physical rehabilitation program for pain management.[1] On January 2, 2019, the claims administrator withheld authorization pending additional medical information.

---

[1] In *Murray American Energy, Inc. v. Michael Keller*, No. 18-0374 (W. Va. Nov. 15, 2018) (memorandum decision), the Court affirmed the July 24, 2018, Order of the Board of Review. In its Order, the Board of Review granted Mr. Keller pain management and instructed the claims administrator to refer him for a pain management evaluation.

5

An independent medical evaluation addendum was requested from Dr. Grady. By Order of the claims administrator dated January 16, 2019, it was stated that the Board of Review, in an Order of February 5, 2018, closed the claim for vocational rehabilitation benefits that were paid from August 8, 2018, through November 5, 2018.

On April 8, 2019, Dr. Grady issued an addendum report stating that he had received a copy of the most recent MRI of Mr. Keller's arthrogram.[2] In addition to the postoperative changes from his prior surgeries, there was a rather marked thinning of the distal rotator cuff tendon with suspected small chronic incomplete articular surface tear, which the radiologist felt was grossly stable since the prior exam was performed on October 1, 2018. Dr. Grady reported that there was no indication of a full thickness rotator cuff tear, labral tear, acute fracture, tendon retraction, or muscle atrophy. He concluded that Mr. Keller was at maximum medical improvement for his right shoulder injury.

The claims administrator issued an Order on April 15, 2019, denying Mr. Keller's request for physical rehabilitation benefits based on the MRI arthrogram and addendum report from Dr. Grady. The claims administrator also denied temporary total disability benefits because Mr. Keller was found by Dr. Grady to be at his maximum degree of medical improvement for his right shoulder injury. Mr. Keller protested the claims administrator's decision and argued that absent from the rehabilitation plan, he has been granted physical rehabilitation for pain management. He also contended that the claim is compensable for the conditions of sprain of unspecified site of shoulder and upper arm; thoracic sprain; major depressive disorder; right shoulder chronic pain, radiculitis right upper extremity; and a history of failed rotator cuff repair.

On February 12, 2020, the Office of Judges affirmed the April 15, 2019, decision by the claims administrator. It was found that Mr. Keller failed to show by a preponderance of the evidence that he may be able to return to gainful employment if he were granted physical rehabilitation and has failed to show that he would be temporarily and totally disabled. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its decision on July 21, 2020.

After review, we agree with the decision of the Office of Judges, as affirmed by the Board of Review. In Ms. Saniga's Closure Report dated January 18, 2018, she noted that on November 22, 2017, she was told by Mr. Keller that he had been awarded Social Security Disability benefits. It was also determined that there is no indication that he would be assisted in returning to remunerative employment with the provision of rehabilitation services. Although Mr. Keller has been granted pain management services, he has provided no evidence to indicate that pain management would assist him in returning to remunerative employment or that he would be rendered totally disabled while participating in pain management, both of which are required by W. Va. Code § 23-4-9 to qualify for the payment of temporary total disability rehabilitation benefits. Therefore, the decision of the Board of Review is affirmed.

---

[2] On January 25, 2019, the claims administrator approved a request from Michael Shramowiat, M.D., for an MRI arthrogram of Mr. Keller's right shoulder. Although the MRI report is referenced, the undated MRI arthrogram is not in the record.

Affirmed.

**ISSUED:** April 23, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton